UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOME REPAIR, LLC as assignee of Living Hope Bible Church, | CIVIL ACTION NO. 3:21-cv-00419 |
| Plaintiff, | (SAPORITO, M.J.) |
| v. | |
| CHURCH MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

# MEMORANDUM

This matter is before the court on the plaintiff's motion to compel the production of documents. (Doc. 20).

## I. *Statement of Facts*

This matter was initiated by the plaintiff in the Court of Common Pleas of Luzerne County, Pennsylvania, by the filing of a complaint on February 9, 2021. Thereafter, on March 8, 2021, the defendant timely removed this matter to this court.

Living Hope Bible Church, a religious institution and owner of real property in Plains, Luzerne County, Pennsylvania, sustained a loss due to a hailstorm on April 15, 2019. At the time of the loss, the Living

Hope Bible Church's insurance policy with the defendant, Church Mutual Insurance Company was in full force and effect. Living Hope Bible Church made a claim to Church Mutual under the policy for losses and damages because of this storm. On January 14, 2020, Living Hope Bible Church assigned any and all of its rights, benefits, proceeds, and causes of action for the subject claim to the plaintiff, Home Repair, LLC.

After a demand for appraisal was made, Church Mutual agreed to the appraisal process only regarding damage to the roof of the premises from the subject hailstorm. An appraisal award was subsequently entered with regard to the damage to the roof of the premises. The plaintiff contends that the siding of the premises was also damaged as a result of the storm, which was not included in the appraisal because Church Mutual denied coverage for the siding of the premises. The plaintiff maintains that the failure and/or refusal to pay all insurance proceeds under the policy because of the hailstorm constitutes a breach of the subject insurance policy.

The plaintiff served a request for production of documents upon Church Mutual. In response, Church Mutual produced its claim file which contained redactions of information within the status reports

forwarded to it by Syndicate Claim Services, Inc., the independent adjuster that it had retained to evaluate and adjust the subject claim. Included among those documents was a Status Report for File No. 200173 dated March 10, 2020, from Jay Kittrick of Syndicate (the "Status Report") addressed to Church Mutual. Therein, Mr. Kittrick discussed his inspection findings regarding the hail damage to the siding of the premises and suggested a reserve.

In Mr. Kittrick's Status Report, Church Mutual redacted a portion of Mr. Kittrick's findings and the specific amount of his suggested reserve. On July 8, 2022, the court ordered Church Mutual to provide it with an unredacted version of the Status Report for an *in-camera* review. The defendant timely submitted the unredacted copy of the report. While Church Mutual contends that the report was prepared in anticipation of litigation, it does not specifically address this crucial element in its submissions. (*See* Doc. 22). Likewise, the plaintiff does not address this element either. (*See* Doc. 20). Nevertheless, the motion is ripe for disposition.[1]

---

[1] The plaintiff has not filed a brief in support of its motion to compel. *See* Local Rule 7.5, requiring briefs in support of a motion to be filed within fourteen (14) days after filing the motion, otherwise the motion

## *II.    Legal Standards*

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

---

shall be deemed withdrawn. In the exercise of our discretion, and as the motion contains a recitation of the facts and law, we will consider the brief filed contemporaneously with the motion.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

5

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare

6

and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable, and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated*

*in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

### III. Discussion

Here, we note that the complaint was originally filed in the Court of Common Pleas of Luzerne County, Pennsylvania, on February 9, 2021, before being removed to this court on March 8, 2021. In the complaint, the plaintiff alleged that the subject hailstorm occurred on April 15, 2019. (Doc. 1-2 ¶9). The assignor, Living Hope Bible Church, made a timely claim to Church Mutual under the insurance policy. (*Id.* ¶10). Church Mutual assigned a claim number and sent an adjuster to evaluate the loss. (*Id.* ¶11). According to Mr. Kittrick's Status Report, on March 6, 2020, he was scheduled to meet with Hancock Claims Consultants which was providing a ladder assist to the roof, and the plaintiff's representative, Chris Ford. Because the ladder was not long enough to reach the roof, another inspection was scheduled for March 19, 2020. While Mr. Kittrick was on the premises on March 6, 2020, he performed a limited inspection of the exterior of the aluminum siding and recorded his observations. Those observations are among the redactions made by Church Mutual. A demand for an appraisal was not made until

September 23, 2020, six months after the start of the inspection. It seems a bit of a stretch for the court to find that on March 6, 2020—the start of the inspection—litigation was anticipated.

### *a. Mental impressions.*

Church Mutual redacted portions of the Status Report which include Mr. Kittrick's observations of the exterior of the siding on March 6, 2020. Mental impressions and opinions of a party and its agents are not generally protected by the work product doctrine unless they are prepared in anticipation of litigation. *See Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, Civ. No. 03-cv-4145, 2004 WL 3037947, *2 (E.D.Pa. Dec. 30, 2004) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). To that end, "work product prepared in the ordinary course of business is not immune from discovery." *Id.* (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)). Thus, as stated by this court in *Keefer v. Erie Insurance Exchange*, Civ. No. 13-cv-1938, 2014 WL 901123 at *4 (M.D. Pa. Mar. 7, 2014), the gravamen of a claim of work product protection necessarily requires an assessment of when litigation was anticipated, which is a determination not subject to a bright-line rule. Our court has long adopted a case-by-case approach.

9

*Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985). As recognized by the Third Circuit, "[p]rudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Thus, whether litigation was reasonably anticipated is a fact-dependent inquiry.

Although the court lacks the necessary evidence to determine precisely when the defendant's claims representatives reasonably anticipated litigation, the court has reviewed the entire unredacted version of the Status Report with this standard in mind and concludes that certain portions of the claims record were prepared in anticipation of litigation and should be protected. Nonetheless, the court finds that Mr. Kittrick's observations of the exterior of the aluminum siding and subsequent reporting thereon were not prepared in anticipation of litigation. Thus, the portion of the Status Report on page 2 relating to Mr. Kittrick's observations of the exterior of the aluminum siding were inappropriately redacted. We will order that Church Mutual produce an

unredacted portion of that paragraph, except as set forth below. Our inquiry, however, does not end there.

### *b. Insurance reserve information.*

Church Mutual contends that the insurance reserve information made by Mr. Kittrick is protected from disclosure because it represents protected reserve information.

An insurance reserve is money set aside "to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Ins. Co. of N. America*, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004), and Pennsylvania requires insurance companies to set reserves aside when they are placed on notice of possible losses arising under their policies. *Keefer* 2014 WL 901123 at 3. This Court has observed that courts in this circuit are split on the question of whether reserves are discoverable in bad faith cases. *See Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 WL 461510, at *5 (M.D. Pa. Feb. 6, 2019) (citing *Consugar v. Nationwide Ins. Co.,* No. 3:10-CV-2084, 2011 WL 2360208, at *5 (M.D. Pa. June 9, 2011). *Barnard* points out that the "[p]revailing view indicates that reserves may be discoverable in a bad faith action when the claim relates to an insurer's failure to settle or where there is a discrepancy regarding the value of the

claim." *Id*. But, "[w]hen the bad faith claim is based on a denial of coverage and 'does not involve the value of the claim or [the plaintiff's] estimation of liability … the reserve information requested is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Id*. at *6.

Here, there is no bad faith claim. The plaintiff has only alleged a breach of contract. In its answer, Church Mutual has denied that it breached the contract. (Doc. 3 ¶26). Also, Church Mutual asserts that it issued payment for all covered damage pursuant to the appraisal award and denied the portion of the loss that is not covered under the policy. (*Id*. ¶¶ 26-27). The issue in this case is Church Mutual's denial of coverage under the policy rather than the value of the plaintiff's claim. Under this circumstance, discovery of the insurer's reserve information is irrelevant. Accordingly, Church Mutual will not be required to produce an unredacted version of the Status Report that relates to insurance reserve information.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: July 19, 2022